IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MID-AMERICA RISK MANAGERS, INC., | CASE NO.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT & JURY DEMAND** |
| CHUBB & SON, A DIVISION OF FEDERAL INSURANCE COMPANY, and CHUBB INSURANCE SOLUTIONS AGENCY, INC., | |
| Defendants. | |

COMES NOW, the Plaintiff, Mid-America Risk Managers, Inc., by and through its counsel, states and alleges the following against Chubb & Son, a division of Federal Insurance Company, and Chubb Insurance Solutions Agency, Inc.:

## JURISDICTION

1. Plaintiff Mid-America Risk Managers, Inc. ("MARM") is incorporated under the laws of the State of Nebraska and has its principal place of business in the State of Nebraska.

2. Upon information and belief, Defendant Chubb & Son, a division of Federal Insurance Company, is incorporated under the laws of the State of New Jersey and has its principal place of business in New Jersey. Defendant Chubb Insurance Solutions Agency, Inc. is incorporated under the laws of the State of New Jersey and has its principal place of business in New Jersey. Hereinafter, Defendants will be collectively referred to as "Chubb."

3. This Court has jurisdiction over the parties pursuant to 28 U.S.C.A. § 1332 as the amount in controversy exceeds the sum of $75,000 and is between citizens of different States.

4. Venue is proper pursuant to 28 U.S.C.A. § 1391 because a substantial part of the events giving rise to this claim occurred in the District of Nebraska.

## THE PARTIES

5. MARM is a managing general underwriter located in Nebraska engaged in the underwriting, marketing, sales, and services of insurance related products, specializing in agricultural insurance coverages.

6. Chubb is a publicly traded property and casualty insurance company.

**GENERAL ALLEGATIONS**

7. MARM and Chubb entered into a Producer Agreement (the "Producer Agreement") effective November 1, 2013, a true and accurate copy of which is attached hereto as Exhibit "A." The Producer Agreement grants MARM the authority to act as Chubb's authorized producer to solicit, receive, and submit applications to Chubb for approval, and to service approved policies.

8. MARM and Chubb also entered into a Policy Administration Agreement (the "PAA") effective November 1, 2013, a true and accurate copy of which is attached as Exhibit "B." The PAA provides an arrangement between Chubb and MARM through which MARM underwrites, markets, sells, and services specialized inland marine insurance policies to insureds through MARM's network of sub-producers as Chubb's authorized producer.

9. Pursuant to the PAA, MARM is an insurance agent for Chubb appointed to administer and offer exclusively to Chubb all insurance risks eligible under the inland marine insurance policies. In exchange, MARM has authority to act as Chubb's agent to solicit and accept applications for policies, and to issue, countersign, deliver, and service such policies. MARM also bills, collects, and holds in trust all premiums received on such policies.

10. To market and sell the specialized inland marine policies MARM underwrites under the PAA, MARM solicited- since its incorporation in April of 1995- long-term relationships with independent insurance agencies and customers in need of specialized inland marine insurance coverage of the types MARM produces on behalf of Chubb. Under the PAA, a sub-producer is any general insurance agency with a direct relationship with insureds in need of specialized inland marine insurance coverage.

11. MARM informed Chubb of its longstanding relationships with its sub-producers, agents and independent brokers and the premium volume in the inland marine policies prior to entering the Producer Agreement and PAA.

12. On July 12, 2017, MARM's President notified Chubb that MARM would no longer place new business or renew policies with Chubb effective August 1, 2017. Such action was not a termination of the Producer Agreement and the PAA as MARM continues to fulfill its contractual requirements under the PAA and the Producers Agreement including, without limitation, servicing existing policies with Chubb until their respective expiration dates.

13. Without MARM's knowledge or authority, since as early as September 25, 2017, Chubb has been contacting MARM's sub-producers falsely stating that MARM unilaterally

terminated its relationship with Chubb in favor of a different market. Such communications from Chubb also include offers of increased commission and other incentives if the sub-producers cease doing business with MARM and begin to work directly with Chubb.

14. Chubb had no known direct contact with MARM's sub-producers prior to September 25, 2017.

15. Despite MARM's request to Chubb that it stop soliciting business directly from MARM's sub-producers, Chubb continues to solicit business from MARM's sub-producers and to induce its sub-producers to cease doing business with MARM and to work instead directly with Chubb. Chubb also continues to falsely tell MARM's sub-producers that MARM unilaterally terminated its relationship with Chubb in favor of a different market.

16. MARM seeks to enjoin Chubb from contacting, soliciting, influencing or persuading or attempting to influence or persuade its sub-producers to cease doing business with MARM and to work instead directly with Chubb, and to cease telling MARM's sub-producers that it unilaterally terminated its relationship with Chubb in favor of a different market.

17. By reason of Chubb's actions, MARM has suffered and will continue to suffer extreme hardship and actual and impending irreparable damage in that it will cause MARM to lose its relationships with its sub-producers, create instability and disruption in its business, and destroy its longstanding reputation in the industry, which is not readily measurable or compensable in monetary terms.

18. A temporary injunction enjoining Chubb to stop contacting, soliciting, influencing or persuading or attempting to influence or persuade MARM's sub-producers to cease doing business with MARM and to enjoin Chubb from falsely stating that MARM unilaterally terminated its relationship with Chubb in favor of a different market is necessary to protect MARM's business.

19. MARM has no adequate remedy at law for Chubb's interference with its business and its solicitation of its sub-producers, and this action for injunctive relief is MARM's only means for securing relief. There is no satisfactory method of quantifying the loss of business, loss of good faith, and disruption caused by Chubb. Unless Chubb is enjoined from contacting, soliciting, influencing or persuading or attempting to influence or persuade MARM's sub-producers and falsely stating that MARM unilaterally terminated its relationship with Chubb for purposes of unfairly competing with MARM, Chubb will continue to cause MARM damage that cannot be fully measured and for which MARM cannot be compensated in monetary terms.

20. Unless Chubb is temporarily restrained and preliminarily and permanently enjoined from the foregoing conduct, MARM will be irreparably harmed by:

 a. Economic loss; loss of good faith and fair dealing, cultivated as a result of MARM's substantial resources in terms of time, management and expense; loss of a majority of its business operations, which is unascertainable at this time; and future economic loss, all of which is presently incalculable; and

 b. Loss of relationships with its sub-producers, continued instability and disruption in its business, and destruction to its longstanding reputation in the industry, for which MARM has no adequate remedy at law.

21. There is a substantial likelihood that MARM will prevail on the merits.

22. The damage to MARM from Chubb's unlawful acts greatly exceed the harm that would result to Chubb if it was enjoined.

23. Issuance of a preliminary injunction would not adversely affect the public interest.

24. MARM is willing to post a bond in the amount the Court deems appropriate for the temporary restraining order.

25. Both the Producer Agreement and the PAA state that the agreements are governed and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law or choice of law. Upon information and belief, the causes of action in MARM's Complaint are governed by Nebraska law.

## COUNT I:
## BREACH OF GOOD FAITH AND FAIR DEALING

26. MARM realleges paragraphs 1-25 of this Complaint as it fully stated herein.

27. Chubb has a duty under the implied covenant of good faith and fair dealing in fulfilling its promises and obligations to MARM under the Producer Agreement and PAA.

28. MARM had the justifiable expectation that once it entered into the Producer Agreement and PAA with Chubb to be its authorized producer with underwriting abilities for the specialized product line it was producing on behalf of Chubb, Chubb would not contact, solicit, influence, persuade or attempt to influence or persuade MARM's sub-producers from ceasing to do business with MARM and thus MARM would not be subject to direct competition from Chubb.

29. Chubb intentionally breached its implied duty of good faith and fair dealing by contacting, soliciting, influencing or persuading or attempting to influence or persuade MARM's

sub-producers to cease doing business with MARM and falsely stating that MARM unilaterally terminated its relationship with Chubb in favor of a different market.

30. As a direct and proximate result of Chubb's breach of its implied duty of good faith and fair dealing, MARM has suffered damages in an amount to be determined at trial of this matter, incidental damage and legal fees.

## COUNT II:
## TORTIUOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

31. MARM realleges paragraphs 1-30 of this Complaint as it fully stated herein.

32. MARM spent years developing and maintaining longstanding business relationships with its sub-producers.

33. By virtue of the contractual relationships between Chubb and MARM, and MARM and its sub-producers, Chubb knew of the business relationships between MARM and its sub-producers.

34. Chubb has intentionally and without justification interfered with MARM's existing business relationships with its sub-producers and continues to do so.

35. Chubb's conduct has caused and will continue to cause MARM damage in the form of lost goodwill, destruction of reputation, and lost revenue and in ways that cannot be readily measured or compensated in monetary terms.

36. Chubb's conduct has caused injury to MARM such that it is entitled to damages under Nebraska law.

## COUNT III:
## CONVERSION

37. MARM realleges paragraphs 1-36 of this Complaint as it fully stated herein.

38. Without authorization, Chubb has exerted dominion over MARM's business relationship with its sub-producers for an indefinite period of time, thereby depriving MARM of its property.

39. As a direct and proximate result of Chubb's conversion of MARM's property, MARM's damages equal the value of these relationships to MARM at the time and place of conversion.

## REQUEST FOR RELIEF

Wherefore, MARM requests that this Court:

40. Issue a temporary restraining order and a preliminary injunction pursuant to Rule 65(b), Federal Rules of Civil Procedure, ordering Chubb, its affiliates, agents, employees, successors, attorneys, and all those in active concert or participation with them to refrain immediately and pending the final hearing and determination of this action from contacting, soliciting, influencing or persuading or attempting to influence or persuade MARM's sub-producers to cease doing business with MARM and falsely telling MARM's sub-producers that it unilaterally terminated its relationship with Chubb in favor of a different market;

41. Issue a permanent injunction perpetually enjoining and restraining Chubb, its affiliates, agents, employees, successors, attorneys, and all those in active concert or participation with them from contacting, soliciting, influencing or persuading or attempting to influence or persuade MARM's sub-producers to cease doing business with MARM and falsely telling MARM's sub-producers that it unilaterally terminated its relationship with Chubb in favor of a different market;

42. Order an award of compensatory damages, in an amount to be determined at trial, for Chubb's willful, malicious, and unlawful actions against MARM.

43. Such other and further relief as the Court deems just and proper, together with interest, costs, reasonable attorneys' fees, and disbursements incurred in undertaking this action.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands trial by jury in Omaha, Nebraska, on all issues so triable.

DATED this 16th day of October, 2017.

        MID-AMERICA RISK MANAGERS, INC.,
        Plaintiff,


    By: /s/ *David L. Welch*
    PANSING HOGAN ERNST & BACHMAN LLP
    10250 Regency Circle, Suite 300
    Omaha, Nebraska 68114
    PH: (402) 397-5500; Fax: (402) 397-3834
    By: David L. Welch, #18881
       Lisa M. Meyer, #19591
       Kellie Chesire Olson #25289
    *Attorneys for Plaintiff*