IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MID-AMERICA RISK MANAGERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CHUBB & SON, a Division of Federal Insurance Company; and CHUBB INSURANCE SOLUTIONS AGENCY, INC., <br><br> Defendants. | 8:17CV392 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on plaintiff Mid-America Risk Managers, Inc.'s ("MARM") Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 4). MARM seeks a Temporary Restraining Order ("TRO") prohibiting Chubb & Son, a Division of Federal Insurance Company ("Chubb") from contacting MARM's sub-producers. MARM also requests a preliminary injunction hearing seeking the same relief. For the reasons stated below, the Motion is granted in part and denied in part.

I. **BACKGROUND**[1]

MARM is a 22-year-old general insurance agency that operates as a managing general underwriter. It has an established network of independent agents, general agents, and sub-producers. MARM specializes in inland marine polices which cover farm irrigation systems.

On October 29, 2013, MARM entered into a Producer Agreement ("agreement") with Chubb & Son, a Division of Federal Insurance Company ("Chubb"). The agreement

---

[1] The following facts are submitted by MARM through affidavits and other documents and are considered true for the purpose of the pending Motion.

gave MARM the authority to act as Chubb's producer to solicit applications, submit the applications to Chubb for approval, and to service approved policies. MARM and Chubb also entered into a Policy Administration Agreement ("PAA") which set up an arrangement through which MARM undertook the duties in the agreement through its established network of sub-producers. MARM informed Chubb prior to entering the agreement and PAA of its longstanding relationship with its sub-producers, general agents, and independent agents.

On January 14, 2016, ACE Limited acquired Chubb and adopted the Chubb name. MARM felt the business relationship changed and informed Chubb on July 12, 2017, that MARM would no longer place new business or renewals effective August 1, 2017.

Chubb Insurance Solutions Agency, Inc. ("CISA"), presumed to be affiliated with Chubb, began contacting MARM's sub-producers stating that MARM "unilaterally terminated its relationship with Chubb in favor of a different market,"[2] and soliciting the sub-producers to work directly with CISA. CISA offered various incentives to the sub-producers, including promising to increase commissions to 20% if the sub-producer would renew the policy directly with CISA.

## II. DISCUSSION

### A. Requirements for Injunctive Relief

"A district court considering injunctive relief evaluates the movant's likelihood of success on the merits, the threat of irreparable harm to the movant, the balance of the equities between the parties, and whether an injunction is in the public interest." *Conquest Commc'ns. Grp., LLC, v. Swanson (In re Gresham)*, 866 F.3d 853, 854 (8th

---

[2]This statement as presented in the Complaint and the supporting evidence is ambiguous. It could be taken to mean that MARM is simply no longer affiliated with Chubb (at least going forward), or it could mean that MARM is no longer in the business of inland marine insurance. The first meaning is accurate, the second could be viewed as materially misleading.

Cir. 2017) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)).

In addition to qualifying for injunctive relief, a TRO granted without written or oral notice to a party requires that (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b).

### B. Likelihood of Success

"Success on the merits has been referred to as the most important of the four factors." *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). MARM states three claims for relief: (1) a breach of the implied covenant of good faith and fair dealing, (2) tortious interference with business relationships, and (3) conversion.

#### 1. Implied Covenant of Good Faith and Fair Dealing

"The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract." *Coffey v. Planet Group, Inc.*, 845 N.W.2d 255, 263 (Neb. 2014). "A violation of the covenant of good faith and fair dealing occurs only when a party violates, nullifies, or significantly impairs any benefit of the contract." *Id*. at 263-64.

MARM bases its implied covenant claim on language from the agreement and from the PAA. The agreement states Chubb will not "solicit Policyholders for the sale of insurance or other products or services without first obtaining your written consent." On its face this is not a breach because Chubb is not soliciting Policyholders but contacting sub-producers. The PAA states that Chubb "recognizes the independent ownership by

3

[MARM] of the expirations and renewal of the insurance business subject to [the PAA]." However, the PAA also states that "if this Agreement is terminated by Strategic Alliance Manager [defined as Paul Friskopp and MARM] . . . then the records, expirations and renewals of Policies written under this Agreement will belong to [Chubb] at its option and Strategic Alliance Manager relinquishes all right or claim to commissions." MARM terminated the PAA with Chubb. Because Chubb has apparently not violated any benefit of the contract, MARM does not appear likely to succeed on its implied covenant claim, at least on this record.

### 2. Tortious Interference with Business Relationships

A claim for tortious interference with a business relationship requires the plaintiff to "prove (1) the existence of a valid business relationship . . . , (2) knowledge by the interferer of the relationship . . . , (3) an unjustified intentional act of interference . . . , (4) proof that the interference caused the harm sustained, and (5) damage to the" plaintiff. *AON Consulting, Inc. v. Midlands Fin. Benefits*, Inc., 275 Neb. 642, 662-63 (2008).

MARM has alleged (1) the prior existence of relationships with its sub-producers, (2) it informed Chubb of the relationship, and (3) it has suffered hardship by reason of Chubb's actions. This satisfies the first and second requirement. Whether or not Chubb engaged in an "unjustified" intentional act of interference appears to be dependent on the question of whether Chubb's communication that MARM "terminated its relationship with Chubb in favor of a different market" was materially and intentionally misleading. If it was, then MARM has satisfied most of the third remaining requirement; if not, then Chubb has not committed "an unjustified intentional act of interference" that would cause harm. *Id*. Finally, there is no evidence of any concrete harm (e.g. actual loss of relationship, business, or income). MARM only states that it has "suffered hardship." The factual record in the Complaint is quite sparse on this issue, and the Court therefore cannot determine if MARM is likely to succeed on this claim.

### 3. Conversion

The allegation that "Chubb has exerted dominion over MARM's business relationship with its sub-producers for an indefinite period of time, thereby depriving MARM of its property" is quite novel. However, if Chubb improperly interfered with MARM's business relationships, that is more properly handled as a tortious interference with a business relationship. *See H.J., Inc. v. International Tel. & Tel. Corp.*, 867 F.2d 1531, 1547 (8th Cir. 1989) (stating conversion does not apply to business relationships because "the general rule is that [conversion] only applies to tangible property, or intangible property customarily merged in, or identified with, some document." (citing Prosser and Keeton on Torts, 91-92 (1984); Restatement (Second) of Torts §§ 222A, 242 (1965))).

### C. Immediate Irreparable Injury

In addition to the Court's doubts about MARM's likelihood of success on this record, it is unclear what irreparable injury MARM has suffered or would suffer before Chubb could be heard in opposition. MARM has alleged that the injury occurs in the form of damage to its business relationships with its sub-producers, but that harm results from Chubb's original communication, which MARM admits has already occurred. Additionally, MARM is not prohibited from contacting its sub-producers to remedy the situation. It does not appear that MARM will suffer any irreparable harm prior to November 1, 2017, the date which the Court will set for a Preliminary Injunction hearing.

## III. Conclusion

On this record, MARM has not shown a likelihood of success on the merits, or that it will experience irreparable injury before Chubb can be heard in opposition. Accordingly,

IT IS ORDERED:
1. MARM's request for a Temporary Restraining Order is denied.

2. MARM's request for a hearing on the issue of a preliminary injunction is granted.

3. A hearing on the issue of a preliminary injunction is set for November 1, 2017, at 9:00 a.m. in Courtroom 4, Roman L. Hruska Federal Courthouse, 111 South 18th Plaza, Omaha, NE before Judge Robert F. Rossiter Jr .

Dated this 20th day of October, 2017.

BY THE COURT:

s/ *Robert F. Rossiter, Jr.*
United States District Judge